PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NICHOLAS M. PARKER (CABN 297860)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    nicholas.parker3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:24-cr-00168 HSG |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| LUIS FERNANDO OLIVA TORRES, a/k/a "Cali Chris," | |
| Defendant. | |

## I.    INTRODUCTION

In 2023, federal agents in the Bay Area learned from authorities in Oregon that an East Bay man known as "Cali Chris" was supplying large quantities of fentanyl to drug dealers from Josephine County, Oregon, who would drive down to the East Bay, buy bulk quantities of fentanyl from "Cali Chris," and return to Oregon to resell that fentanyl to users in Josephine County. An informant eventually introduced an undercover officer in the Bay Area to "Cali Chris," whom officers later identified as the defendant, Luis Fernando Oliva Torres. That undercover officer bought significant quantities of fentanyl and methamphetamine from the defendant three separate times between October 2023 and January 2024. The defendant sold more fentanyl to a different informant in April 2024 and was arrested in Oakland in May 2024 with 14 pounds of methamphetamine and 3.5 pounds of fentanyl, as well as lesser quantities of

1

heroin and cocaine and more than $30,000 in cash, which the defendant has admitted was proceeds of drug trafficking.

The defendant was indicted on March 19, 2024, and charged with three violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B). *See* Dkt. 1. He pleaded guilty to all three counts on February 5, 2025, pursuant to a Rule 11(c)(1)(B) plea agreement. *See* Dkt. 26. The sheer quantity of the drugs at issue in this case and the ruinous consequences wrought by selling fentanyl and methamphetamine counsel in favor of a lengthy prison sentence. At the same time, the circumstances of the defendant's life, particularly his impoverished upbringing and his status as a first-time offender, as well as his early and complete acceptance of responsibility, counsel in favor of a variance downward from the applicable Guidelines range. Accordingly, the government submits this sentencing memorandum to advise the Court why it believes a below-Guidelines, but nevertheless significant, sentence of 60 months in custody, to be followed by four years of supervised release, is a reasonable disposition of this case. The U.S. Probation Office has also recommended a below-Guidelines custodial sentence (48 months). *See* Dkt. 30 (PSR) at 20. The defendant asks the Court to impose a custodial sentence of 30 months. *See* Dkt. 31 at 3.

## II.    DISCUSSION

### A.    Offense Conduct

The government generally agrees with the recitation of offense conduct in the Presentence Investigation Report (PSR) prepared by the Probation Office. *See* PSR ¶¶ 5–13.

Federal agents in the Bay Area began investigating the defendant in June 2023, when they learned from law enforcement officers in Oregon that the defendant was a—if not *the*—primary supplier of fentanyl to street-level drug dealers in Josephine County, Oregon.[1] In October 2023, a confidential informant who had a history of buying drugs from the defendant worked with an undercover officer assigned to the Alameda County Narcotics Task Force to set up a drug deal between the officer and the defendant. That transaction, which occurred on October 25, 2023, was the first in a series of three—all in Oakland—in which the undercover officer bought large quantities of fentanyl and methamphetamine from the defendant:

---

[1] Indeed, on the day he was arrested, Mr. Oliva Torres was accompanied in his car by two people: his girlfriend and a seeming stranger who told officers he was from Oregon and who may have been buying drugs from Mr. Oliva Torres when officers interrupted the transaction.

2

| Defendant's Sales to Undercover Officer | | |
|---|---|---|
| **Date** | **Drugs Sold** | **Quantity (net weight)** |
| October 25, 2023 | Fentanyl<br>Methamphetamine | 471.3 grams<br>13.5 grams |
| November 30, 2023 | Methamphetamine<br>Fentanyl | 439.4 grams<br>230.7 grams |
| January 9, 2024 | Methamphetamine<br>Fentanyl | 453.1 grams<br>223.6 grams |

The defendant also sold about one-half pound of fentanyl to a different confidential informant in April 2024. That deal, too, took place in Oakland. *See* PSR ¶¶ 6–10.

On May 22, 2024, officers assigned to the Alameda County Narcotics Task Force arrested the defendant in his car in Oakland. Inside the car, officers found about 6,366 grams—that is, 14 *pounds*—of methamphetamine and about 1,612 grams (3.5 pounds) of fentanyl, as well as lesser quantities of heroin and cocaine. The arresting officers also found $30,753 in cash in the defendant's car. *See* PSR ¶ 11. The defendant has admitted all of the drugs and cash in his car were his. *See* Dkt. 26 at ¶ 2.

### B. Procedural History

The defendant was indicted on March 19, 2024, on three counts charging distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) [Count 1], and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) [Counts 2–3]. *See* Dkt. 1.

Following his arrest in May 2024, the defendant took responsibility quickly; he pleaded guilty to all three counts against him on February 5, 2025. *See* Dkt. 26. As part of his guilty plea, the defendant agreed, among other things (i) that all of the drugs and cash found in his car on the date of his arrest were his; (ii) to the Guidelines calculation noted below, which results in a total offense level of 27; (iii) to forfeit his interest in the $30,753 in cash seized on the date of his arrest; (iv) to recommend a custodial sentence of at least 30 months; and (v) that the Probation Office should impose a special, suspicion-less search condition for any period of supervised release. *See* Dkt. 26 at ¶¶ 2, 7–8, 11. In exchange for the defendant's guilty plea—and in view of his satisfaction of the requirements of U.S.S.G. § 5C1.2—the government agreed, among other things, to recommend a custodial sentence of no more than 60 months. *See* Dkt. 26 at ¶¶ 7, 16.

3

The defendant has been in continuous federal custody since he was arrested.

### C. Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the Sentencing Guidelines. *See* PSR ¶¶ 17–28, 57. Specifically, the government agrees that the Base Offense Level is 34 based on a total converted drug weight between 10,000 kilograms and 30,000 kilograms. *See id.* at ¶ 19; U.S.S.G. § 2D1.1(a)(5), (c)(3). However, the government also agrees that certain reductions are appropriate, including for the defendant's prompt and unequivocal acceptance of responsibility, such that the Total Offense Level is 27. *See* PSR ¶¶ 20, 25–28; U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2; 3E1.1; 4C1.1.

The government also agrees with the finding of the Probation Office that the defendant has no prior criminal convictions and therefore zero criminal history points, placing him in Criminal History Category I. *See* PSR ¶¶ 29–32.[2] A total offense level of 27, at Criminal History Category I, yields an advisory sentencing range of 70 to 87 months of imprisonment. *See id.* at ¶ 57; U.S.S.G. ch. 5, pt. A.

### D. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Sentencing Guidelines. *See id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id.* at 991–93.

In arriving at the appropriate sentence for Mr. Oliva Torres, and in light of 18 U.S.C. § 3553(a), the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

---

[2] Although he has no prior *convictions*, the defendant has been *arrested* twice in San Francisco on suspicion of selling drugs: once in December 2020 and again in February 2021. *See* PSR ¶¶ 33–34.

|     |     |                                                                                                                 |
| --- | --- | --------------------------------------------------------------------------------------------------------------- |
|     | (4) | the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and |
|     | (5) | the need to provide restitution to any victims of the offense.                                                  |

### E.   Recommended Sentence and Section 3553(a) Factors

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a below-Guidelines, but still significant sentence of 60 months in custody, to be followed by four years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the purposes of sentencing, in consideration of the nature of the offense and the history and characteristics of the defendant. In addition, the defendant has agreed to forfeit his interest in $30,753 seized on the date of his arrest and that an expanded search condition may be imposed during any term of supervised release. *See* Dkt. 26 at ¶¶ 8, 11. Given the nature of this offense, the requested condition is necessary to serve the interests of deterrence and rehabilitation.

The government acknowledges that the defendant grew up, like many in Honduras, in abject poverty. *See* PSR ¶¶ 39–40. The government also recognizes that Mr. Oliva Torres may have turned to drug dealing to provide for his family after losing his job in the early days of the COVID-19 pandemic. *See id.* ¶¶ 16, 40. And the government applauds the defendant for promptly and unequivocally taking responsibility for his criminal conduct in this case. Each of these factors, and certainly all of them together, warrant a downward variance from the advisory Sentencing Guidelines range of 70–87 months and imposition of a below-Guidelines sentence.

Nevertheless, the fact remains that Mr. Oliva Torres—who, unlike many defendants who come before the Court to be sentenced, was *not* abused as a child, does *not* come from a broken or violent home, and does *not* have a history of behavioral or emotional issues, *see* PSR ¶¶ 39, 42, 45, 47—made a choice to sell drugs. Where others work multiple jobs to make ends meet or struggle to get by but remain law-abiding members of society, Mr. Oliva Torres turned to crime. He sold drugs beginning no later than December 2020 and continuing through his arrest in this case in May 2024. At the time of his arrest, the defendant was a professional drug dealer who had apparently cornered the wholesale fentanyl distribution market in an entire county in Oregon and who had access to limitless quantities of fentanyl and methamphetamine. The defendant's devotion to his family, including his young daughter, is as

laudable as his motivations for turning to crime are understandable, but it does not excuse his conduct. Not everyone who grows up in poverty or who loses a job takes the easy way out by breaking the law. That is what Mr. Oliva Torres did, and he must face the consequences of that choice.

### III. CONCLUSION

For the foregoing reasons—and in full consideration of the applicable Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a)—the government respectfully requests that the Court sentence the defendant to 60 months in custody, to be followed by four years of supervised release. Such a sentence accounts not only for the defendant's occupation as a drug dealer with access to a seemingly bottomless supply of fentanyl and methamphetamine, but also for the difficult circumstances of the defendant's upbringing and his status as a first-time offender. The government also requests that the Court include the expanded search condition to which the defendant has already agreed among the conditions of his supervised release (should he not be deported following his release from custody). The defendant shall also forfeit his interest in $30,753 seized on the date of his arrest and pay a mandatory special assessment of $300 ($100 per count).

DATED: May 21, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

 /s/ *Nicholas Parker*
NICHOLAS M. PARKER
Assistant United States Attorney